UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

Case No. 1:21-cv-3078

Lawrence Pardo and Bradly Holman,

    Plaintiffs,

v.

Washington Nationals Baseball Club, LLC,

    Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, Lawrence Pardo ("**Pardo**") and Bradly Holman ("**Holman**") (collectively, "**Plaintiffs**"), by and through their undersigned counsel, hereby sue Defendant, Washington Nationals Baseball Club, LLC ("**Defendant**"), and allege:

**NATURE OF ACTION**

1. This is an action seeking to remedy Defendant's violations of Title VII of the Civil Rights Act of 1994, which prohibits employment discrimination based on race, color, religion, sex, and national origin. Plaintiffs were unlawfully terminated as employees of Defendant after they requested a religious exemption to Defendant's vaccine mandate, which only applied to certain of Defendant's employees, in a manner that constitutes discrimination on the basis of religion.

2. Plaintiffs have devoted their adult lives to professional baseball, as talented athletes, scouts, and, most recently, as selfless coaches. For the last several years, they were employed by Defendant as minor league pitching coaches and, in the case of Plaintiff Holman, as Defendant's minor league pitching coordinator. Through their work, they contributed to the professional careers of multiple future major league baseball players. Plaintiffs have always

satisfactorily and dutifully performed their duties as employees of Defendant. In fact, their contributions (and those of a broader community of athletes, coaches, scouts, and front office executives) contributed to Defendant's franchise being crowned World Series champions just two (2) years ago. Plaintiffs, in their own right, should have many years left in their coaching careers, potentially including at the Major League level of baseball.

3. As devoted as Plaintiffs are to baseball, their sincerely held religious beliefs guide them in their lives on a daily basis and are not negotiable. Those sincerely held beliefs led each of them to independently conclude that taking any of the variations of the Covid-19 therapeutical vaccines, which were developed from or tested on aborted fetal cells, would offend those sincerely held religious beliefs.

4. Accordingly, after Defendant announced a vaccine mandate that applied to all of Defendant's employees, except for the players with whom Plaintiffs worked on a daily basis, Plaintiffs each requested a religious exemption to the vaccine mandate. In their requests for a religious exemption, Plaintiffs confirmed that they were prepared to accept any reasonable accommodation, including regular Covid testing, wearing masks, and exercising social distancing measures as they have done since the beginning of the Covid pandemic.

5. Thereafter, Defendant's internal counsel engaged in an interactive process with each of Plaintiffs to ascertain the nature and extent of their respective religious beliefs.

6. Defendant then summarily denied each of Plaintiffs' requests for a religious exemption, albeit after professing its respect and recognition of Plaintiffs' sincerely held religious beliefs. The communication received by each of the Plaintiffs from Defendant denying their requests for a religious exemption stated that "[t]he Company recognizes and respects your religious beliefs and would accommodate those beliefs if it could."

7. Upon its recognition of Plaintiffs' sincerely held religious beliefs, Defendant was required to consider all possible reasonable accommodations and could only deny Plaintiffs a religious exemption if the accommodation would result in an "undue hardship" to Defendant. In an attempt to suggest that Plaintiffs were being denied a religious exemption because of such an undue hardship, Defendant's denial document purported to explain that "in light of the fact that a fully approved vaccine is now available, and given the nature of your position, duties, and essential functions, your continued performance of your duties without being vaccinated will pose an unacceptable risk to the health of Company employees (including you), customers, visitors, and others with whom you are required to interact in connection with your job duties."

8. Defendant's explanation for denying Plaintiffs a religious exemption is unavailing for several reasons. First and foremost, the possible accommodations available to Defendant have been in place since the return of baseball during the Covid pandemic, Plaintiffs have safely complied with such Covid protocols for months, including by submitting to testing several times per week and wearing facial coverings where mandated, and the continuation of such protocols as an accommodation for unvaccinated employees is consistent with the guidelines published by Centers for Disease Control and Prevention (the "**CDC**"). Moreover, the notion that granting Plaintiffs a religious exemption would pose a risk to others is rendered absurd by the fact that the employees with whom Plaintiffs interacted on a daily basis (*i.e.*, the players) are not subject to Defendant's vaccine mandate.

9. Defendant's flimsy attempt to articulate an undue hardship is further belied by the the CDC's own guidelines, which recommend the use of face coverings and social distancing for unvaccinated people, and those pronounced by the administration of President Joe Biden through the Department of Labor's Occupational Safety and Health Administration ("**OSHA**"), which call for either weekly testing or vaccinations, and require that unvaccinated employees wear a

3

face covering while in the workplace. Moreover, as coaches who constantly worked outside, Plaintiffs were exempted from the Biden vaccine mandate, as interpreted by OSHA.

10. Instead of honoring its obligation to provide Plaintiffs with a religious exemption and reasonable accommodations, or following CDC and OSHA guidelines, including those which exclude coaches that work constantly outside from any vaccine mandates, Defendant summarily terminated Plaintiffs' employment. In so doing, Defendant has placed Plaintiffs' careers in baseball in peril. This action seeks to remedy Defendant's clear violations of Title VII and decisions that can only be described as discrimination on religious grounds.

## PARTIES, JURISDICTION, AND VENUE

11. Plaintiff Pardo is a resident of Miami, Florida and a devout Catholic. Pardo was employed by Defendant as a minor league pitching coach for several years.

12. Plaintiff Holman is a resident of Wichita, Kansas and a devout Christian. Holman was employed by Defendant as a minor league pitching coordinator for the last two (2) years and as a pitching coach for Defendant's AAA affiliate for two (2) years before that, including in 2019 when Defendant's Major League franchise was crowned World Series champion.

13. Defendant is a professional baseball team doing business in the District of Columbia and has continually had at least fifteen (15) employees.

14. At all relevant times, Defendant has been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§2000e (b), (g), and (h).

15. Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, and 1343. This action is authorized pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("**Title VII**") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C § 1981a.

**GENERAL ALLEGATIONS**

16.     On August 12, 2021, Alan Gottlieb, Defendant's Chief Operating Officer, sent an email to all employees explaining that Defendant's COVID-19 vaccination policy required all full-time employees to be fully vaccinated. Any employee who had not been vaccinated had until August 26,2021, to provide proof of their first vaccine dose, or face a two-week unpaid administrative leave if the deadline was missed. The email further stated that if the first vaccine dose was not verified by September 10, 2021, the employee would be terminated.

17.     The athletes employed by Defendant, at any level, were not subject to the same vaccination requirements as other employees, even though, as in the case of Plaintiffs, they are in close contact with other employees. Plaintiffs, for example, were in constant contact with the athletes that were not required to be vaccinated on a daily basis as they worked with them directly.

18.     On August 15, 2021, Plaintiffs each submitted a request for accommodation based on a religious exemption to Defendant's general counsel, Betsy Philpott ("**Ms. Philpott**").

19.     Plaintiff Pardo is a devout Catholic and strongly opposed to abortion. As expressed in his request for a religious exemption, Plaintiff Pardo knew that the vaccines available to prevent COVID-19 used aborted fetal cell tissue in their manufacturing, development, or testing and believed that accepting such a vaccine was morally repugnant to Plaintiff Pardo and violated his sincerely held religious beliefs.

20.     Plaintiff Holman is a Christian and also an opponent of abortion. In his request for a religious exemption, Plaintiff Holman expressed that, after praying for guidance, his faith led him to believe that accepting the vaccine was a violation of his faith. Among other things, Plaintiff Holman could not reconcile accepting a vaccine that used aborted fetal cell tissue in its

manufacturing, development, or testing, as is the case with the vaccines currently available to prevent COVID-19, with his closely held religious beliefs.

21. In each of their requests, Plaintiffs expressed their willingness to accept regular testing, and other safety measures such as mask wearing and social distancing, that have already been in place as part of Defendant's COVID-19 safety protocols.

22. On August 26, 2021, Ms. Philpott engaged in an interactive process with each of Plaintiffs during which she inquired as to the nature of their religious beliefs and their requests for religious exemptions from Defendant's vaccine mandate.

23. On August 27, 2021, Plaintiffs each received similarly worded emails from Ms. Philpott that denied their request for a religious exemption. Both emails included the statement that Defendant "recognizes and respects" their religious views but was unable to provide any accommodation for "safety" reasons. Plaintiffs were notified that unless they were vaccinated by September 14, 2021, they would be terminated.

24. No explanation was provided as to why Defendant refused to accommodate Plaintiff's exemption request.

25. Thereafter, Plaintiffs each received an email from Bob Frost, Defendant's Senior Vice-President and Chief People Officer, that confirmed their termination as of September 15, 2021.

26. After the termination of their employment with Defendant, Plaintiffs each filed a charge with the Equal Employment Opportunity Commission (the "**EEOC**") alleging violations of Title VII by Defendant.

27. On October 14, 2021, the EEOC issued to Plaintiff Pardo a Notice of Right to Sue indicating that it was unlikely for the EEOC to complete its investigation within 180 days and that, therefore, it was terminating its processing of the EEOC charge filed by Plaintiff Pardo.

28. On October 28, 2021, the EEOC issued to Plaintiff Holman a Notice of Right to Sue indicating that it was unlikely for the EEOC to complete its investigation within 180 days and that, therefore, it was terminating its processing of the EEOC charge filed by Plaintiff Holman.

29. All conditions precedent to the initiation of this lawsuit have been fulfilled.

30. Plaintiffs have retained the undersigned counsel and are obligated to pay their reasonable attorneys' fees and costs incurred prosecuting this action, which they are entitled to recover from Defendant upon prevailing in this action.

## CAUSE OF ACTION

### Count I – Action for Title VII Violation

31. Plaintiffs repeat and incorporate the allegations of Paragraphs 1 through 18 above as if set fully therein.

32. This is an action stemming from Defendant's violation of Title VII of the Civil Rights Act of 1964, which provides in Section 2000e-2(a) as follows:

> It shall be an unlawful employment practice for an employer –
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

Plaintiffs assert this action under Title I of the Civil Rights Act of 1991, which created a private cause of action for compensatory and punitive damages against an employer stemming from a violation of Title VII of the Civil Rights Act of 1994.

33. Defendant has discriminated against Plaintiffs and/or deprived them of employment opportunities based on Plaintiffs' religion when it terminated their employment after they requested a religious exemption to Defendant's vaccine mandate and Defendant expressed its recognition and respect for their sincerely held religious beliefs, despite the availability of reasonable accommodations that do not present an undue hardship to Defendant.

34. Defendant refused to accommodate Plaintiffs under false pretenses and by offering a false choice between Plaintiffs' continued employment or adherence to their sincerely held religious beliefs.

35. Under these circumstances, Defendant's adverse employment action (*i.e.*, the termination of Plaintiffs' employment) constitutes discrimination and/or a denial of equal employment opportunities on the basis of religion in violation of Title VII of the Civil Rights Act of 1994.

36. As a direct and proximate result of Defendant's unlawful practices, Plaintiffs have been deprived of equal employment opportunities and have incurred pecuniary damages for past and future loss of income and job search expenses. Plaintiffs have also suffered non-economic damages as a result of Defendant's unlawful employment practices, including emotional pain, distress, humiliation, loss of self-esteem, and loss of civil rights.

37. Further, Defendant's unlawful employment practices were intentional and carried out with malice or reckless indifference to Plaintiffs' federally protected rights and, therefore, Plaintiffs are entitled to recover punitive damages for Defendant's wrongdoing.

38. Finally, Plaintiffs are entitled to recover their costs, including reasonable attorneys' fees, incurred for prosecuting this action.

WHEREFORE, Plaintiffs demand the entry of a judgment in their favor and against Defendant for money damages, including punitive damages for its malicious and reckless

conduct described above, awarding Plaintiffs their costs, including reasonable attorneys' fees, incurred prosecuting this action, and such further relief as the Court deems just and proper under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated on this 22nd day of November 2021.

        Respectfully submitted,

By: s/ Luis A. Cordero
Luis A. Cordero
Distritct of Columbia Bar No. 428780
lcordero@corderoassociates.com
**Cordero & Associates, P.A.**
*Counsel for Plaintiff*
Douglas Entrance (North Tower)
800 S. Douglas Road, Suite 350
Coral Gables, Florida 33134
T: (305) 777-2677
F: (305) 777-2670

By: /s/ Alexander F. Fox
Alexander F. Fox*
Florida Bar No. 167886
alexfox@alexanderfoxlaw.com
**Alexander F. Fox, P.A.**
*Counsel for Plaintiff*
1 Alhambra Plaza, Suite 1225
Coral Gables, Florida 33134
Tel: (305) 448-1033

By: s/ Eduardo F. Rodriguez
Eduardo F. Rodriguez*
Florida Bar No. 036423
**EFR LAW FIRM**
*Counsel for Plaintiff*
1 Alhambra Plaza, Suite 1225
Coral Gables, Florida 33134
Office: (305) 340-0034
eddie@efrlawfirm.com

\* *Pro Hac Vice* Admission Pending